**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>        *Plaintiff,*<br><br>                    **v.**<br><br>**TPC GROUP, LLC,**<br><br>        ***Defendant.*** | Civ. No. _____ |

**COMPLAINT**

Plaintiff, the United States of America ("United States"), by the authority of the Attorney General and through the undersigned attorneys, and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

**NATURE OF THE ACTION**

1.      This is a civil action brought pursuant to Section 113(b) of the Clean Air Act (the "Act"), 42 U.S.C. § 7413(b), for assessment of civil penalties and injunctive relief against TPC Group. LLC (the "Defendant") for violations of Sections 112(r)(1) and 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(1) and (r)(7), and certain provisions of the Chemical Accident Prevention Provisions, 40 C.F.R. Part 68 (the "Risk Management Program Regulations"), in connection with the Defendant's petrochemical manufacturing facilities located in Houston, Texas ("Houston Facility" or "HNO") and Port Neches, Texas ("Port Neches Facility" or "PNO").

2.      Certain of the violations alleged in this Complaint caused or contributed to conditions that, on November 27, 2019, led to an explosion at the Port Neches Facility that resulted in the release of more than 11 million pounds of regulated substances, the evacuation of

approximately 50,000 people, more than $150 million in offsite property damage, and other damages to human health and the environment (the "PNO Explosion").  In addition, this Complaint alleges numerous other violations of the Risk Management Program Regulations at the Houston Facility and Port Neches Facility unrelated to the PNO Explosion, including at least 60 incidents involving the accidental release of regulated substances at Defendant's Houston Facility.

## JURISDICTION, VENUE, AUTHORITY AND NOTICE

3.      This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345, and 1355.

4.      Venue is proper in this judicial district pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395.  The Defendant does business in, and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

5.      Authority to bring this action is vested in the United States Department of Justice pursuant to Section 305 of the Act, 42 U.S.C. § 7605.

6.      Notice of commencement of this action has been given to the State of Texas pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b).

## PARTIES

7.      The Plaintiff is the United States of America, acting at the request of the EPA, an agency of the United States.

8.      The Defendant is a for-profit limited liability company organized under the laws of the State of Texas and doing business in this judicial district. The Defendant's parent company, TPC Group, Inc., is a for-profit corporation organized under the laws of the State of Texas and doing business in this judicial district. The Defendant's ultimate parent, SK Second

Reserve, LP f/k/a Sk Capital Partners, L.P., is a Delaware limited partnership with its principal place of business in New York. The Defendant is the parent company of Texas Petrochemicals LP.

9.      The Defendant is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e) and within the meaning of Section 113(b) of the Act.

10.     At all times relevant to this Complaint, the Defendant was the owner and operator of the Port Neches Facility located in port Neches, Texas and the Houston Facility located in Houston, Texas.

## STATUTORY AND REGULATORY FRAMEWORK

11.     In 1990, Congress added Section 112(r) to the Act – Prevention of accidental release, *see* Pub. L. No. 101-549 (Nov. 15, 1990), in response to catastrophic chemical releases in Bhopal, India, and Institute, West Virginia. S. Rep. No. 101-228 (Dec. 20, 1989), *reprinted in* 1990 U.S.C.C.A.N. 3385, 3519.

12.     The objective of Section 112(r) of the Act and its implementing regulations is "to prevent the accidental release and to minimize the consequences of any such release of any substance listed pursuant to Section 112(r)(3) ('regulated substance') or any other extremely hazardous substance."  42 U.S.C. § 7412(r)(1).

13.     Section 112(r) of the Act, 42 U.S.C. § 7412(r), establishes two sets of requirements for owners and operators of stationary sources. The first, known as the General Duty Clause, is set forth in Section 112(r)(1) of the Act, 42 U.S.C. § 7412(r)(1). The second, known as the Risk Management Program ("RMP") regulations, were established pursuant Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7), and are codified at 40 C.F.R. Part 68.

14.     Section 112(r)(1) of the Act, 42 U.S.C. § 7412(r)(1), mandates distinct requirements for owners and operators of stationary sources producing, processing, handling or

storing regulated or other extremely hazardous substances.  In pertinent part, Section 112(r)(1) of

the Act provides:

> The owners and operators of stationary sources producing, processing, handling
> or storing such substances have a general duty in the same manner and to the
> same extent as Section 654 of Title 29 [29 U.S.C. § 654)] to identify hazards
> which may result from such releases using appropriate hazard assessment
> techniques, to design and maintain a safe facility taking such steps as are
> necessary to prevent releases, and to minimize the consequences of accidental
> releases which do occur.

42 U.S.C. § 7412(r)(1) (hereinafter the "General Duty Clause" or "GDC").

15.     Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7), requires the Administrator to

promulgate regulations that address release prevention, detection, and correction requirements

for stationary sources with threshold quantities of regulated substances listed pursuant to Section

112(r)(3) of the Act, 42 U.S.C. § 7412(r)(3). Section 112(r)(7) of the Act, 42 U.S.C.

§ 7412(r)(7), provides in pertinent part:

> (A) In order to prevent accidental releases of regulated substances, the Administrator is
> authorized to promulgate release prevention, detection, and correction requirements
> which may include monitoring, record-keeping, reporting, training, vapor recovery,
> secondary containment, and other design, equipment, work practice, and operational
> requirements.
>
> *       *       *       *
>
> (B)(ii) The regulations under this subparagraph shall require the owner or operator of
> stationary sources at which a regulated substance is present in more than a threshold
> quantity to prepare and implement a risk management plan to detect and prevent or
> minimize accidental releases of such substances from the stationary source, and to
> provide a prompt emergency response to any such releases in order to protect human
> health and the environment.  Such plan shall provide for compliance with the
> requirements of this subsection . . . .
>
> *       *       *       *
>
> E. After the effective date of any regulation or requirement imposed under this
> subsection, it shall be unlawful for any person to operate any stationary source subject to
> such regulation or requirement in violation of such regulation or requirement.

16.     Section 112(r)(3) of the Act, 42 U.S.C. § 7412(r)(3), requires the Administrator to promulgate a list of regulated substances, "which, in the case of an accidental release, are known to cause or may reasonably be anticipated to cause death, injury, or serious adverse effects to human health or the environment." Section 112(r)(5) of the Act, 42 U.S.C. § 7412(r)(5), requires the Administrator to establish "a threshold quantity for any substance listed pursuant to Section 112(r)(3) of the Act, 42 U.S.C. § 7412(r)(3)."  Pursuant to Sections 112(r)(3) and (r)(5) of the Act, 42 U.S.C. § 7412(r)(3) and (r)(5), the Administrator promulgated a list of regulated substances and respective threshold quantities, which is codified at 40 C.F.R. § 68.130, Tables 1, 2, 3, and 4.

17.     Pursuant to 40 C.F.R. § 68.10(a), the RMP regulations are applicable to any "owner or operator of a stationary source that has more than a threshold quantity of a regulated substance in a process."

18.     The regulations at 40 C.F.R. § 68.10 set forth how the RMP regulations apply to each program level of covered processes.

19.     "Covered process" is defined by 40 C.F.R. § 68.3 as "a process that has a regulated substance present in more than a threshold quantity as determined under § 68.115."

20.     "Process" is defined by 40 C.F.R. § 68.3 as "any activity involving a regulated substance including any use, storage, manufacturing, handling, or on-site movement of such substances, or combination of these activities.  For the purposes of this definition, any group of vessels that are interconnected, or separate vessels that are located such that a regulated substance could be involved in a potential release, shall be considered a single process."

21.     Pursuant to 40 C.F.R. § 68.10(i), "[a] covered process is subject to Program 3 if the process does not meet the requirements of [Program 1], and if either … (1) [t]he process is in

NAICS code 32211, 32411, 32511, 325181, 325188, 325192, 325199, 325211, 325311, or

32532; or (2) [t]he process is subject to the OSHA process safety management standard, 29

C.F.R. 1910.119."

22.    Pursuant to 40 C.F.R. § 68.12, the owner and operator of a stationary source with

a process subject to Program 3 shall: (1) submit a Risk Management Plan, as provided in

§§ 68.150 to 68.185, 40 C.F.R. § 68.12(a); (2) develop and implement a management system as

provided in § 68.15, 40 C.F.R. § 68.12(d)(1); (3) conduct a hazard assessment as provided in

§§ 68.65 through 68.87, 40 C.F.R. § 68.12(d)(2); (4) implement the prevention requirements of

§§ 68.65 through 68.87, 40 C.F.R. § 68.12(d)(3); (5) coordinate response actions with local

emergency planning and response agencies as provided in § 68.93, 40 C.F.R. § 68.12(d)(4); (6)

develop and implement an emergency response program, and conduct exercises, as provided in

§§ 68.90 to 68.96, 40 C.F.R. § 68.12(d)(5); and (7) submit as part of the [Risk Management

Plan] the data on prevention program elements for Program 3 processes as provided in § 68.175,

40 C.F.R. § 68.12(d)(6).

23.    The term "stationary source" is defined by Section 112(r)(2)(C), of the Act, 42

U.S.C. § 7412(r)(2)(C), and the regulation at 40 C.F.R. § 68.3, in part as "any buildings,

structures, equipment, installations or substance-emitting stationary activities which belong to

the same industrial group, which are located on one or more contiguous properties, which are

under the control of the same person (or persons under common control), and from which an

accidental release may occur."

24.    The term "regulated substance" is defined by Section 112(r)(2)(B) of the Act, 42

U.S.C. § 7412(r)(2)(B), and the regulation at 40 C.F.R. § 68.3, as "any substance listed pursuant

to Section 112(r)(3) of the CAA."

25.     The term "accidental release" is defined by Section 112(r)(2)(A) of the Act, 42 U.S.C. § 7412(r)(2)(A), and 40 C.F.R. § 68.3 as "an unanticipated emission of a regulated substance or other extremely hazardous substance into the ambient air from a stationary source."

26.     Section 113(b) of the Act, 42 U.S.C. § 7413(b), provides that the EPA Administrator shall, in the case of a person that is the owner or operator of a major stationary source, and may, in the case of any other person, whenever such person has violated any requirement or prohibition of Subchapter I of the Act (42 U.S.C. §§ 7401-7515), commence a civil action for permanent or temporary injunction, or to assess and recover a civil penalty of not more than $25,000 per day for each such violation, or both.

27.     Under the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Debt Collection Improvements Act of 1996 ("DCIA"), 31 U.S.C. § 3701, and the Federal Civil Penalties Inflation Act Improvement Act of 2015, 28 U.S.C. § 2461, and pursuant to EPA's Civil Monetary Penalty Inflation Adjustment Rule, 40 C.F.R. Part 19, which was promulgated pursuant to the DCIA, the maximum amount of the civil penalties provided under Section 113(b) of the Clean Air Act was increased to $37,500 per day for each violation occurring from January 12, 2009 until November 2, 2015, and $117,468 per day for each violation occurring after November 2, 2015 and assessed on or after January 6, 2023.

## CHAPTER 11 BANKRUPTCY FILING

28.     On June 1, 2022, TPC and several affiliates filed a petition for Chapter 11 reorganization pursuant to Title 11 of the Bankruptcy Code, 11 U.S.C. § 362 et. seq., in the Delaware Bankruptcy Court (Case No. 22-10493).

29.     On August 23, 2022, the EPA issued an Administrative Order on Consent (Docket No. CAA-06-2022-3364) ("Administrative Order") requiring the Defendant to take actions to comply with Section 112(r)(1) and 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(1) and (r)(7), and the 40 C.F.R. Part 68 at the Houston Facility.

30.     On November 29, 2022, the EPA filed Proof of Claim No. 401987 ("Proof of Claim") against the Defendant seeking, among other things, a claim for payment of a civil penalty pursuant to Section 113(e) of the Act, 42 U.S.C. § 7413(e), for the Defendant's alleged violations of Sections 112(r)(1) and 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(1) and (r)(7), and the 40 C.F.R. Part 68.  In addition, EPA filed the Proof of Claim in a protective fashion against the debtor with respect to equitable remedies that are not within the Bankruptcy Code's definition of "claim," 11 U.S.C. § 101(5), including for injunctive relief under the Act.

31.     Also on November 29, 2022, the United States and TPC agreed upon a Settlement Term Sheet [Docket No. 1265] stating that the parties would continue negotiations on a Consent Decree to address TPC's compliance with the requirements of Section 112(r) of the Act, 42 U.S.C. 7412(r), and 40 C.F.R. Part 68 at the Houston and Port Neches Facilities, including terms related to process safety information, process hazard analysis, operating procedures, emergency shutdown procedures, management of change, risk management program action tracking, key performance indicators, compliance audits, incident investigation, and risk management plan required corrections.  The Settlement Term Sheet also requires that the Consent Decree include an allowed claim for civil penalties for any violations of Section 112(r) of the Act alleged in this Complaint and EPA's Proof of Claim through the date of lodging of the Consent Decree, as to be agreed upon and detailed in the Consent Decree, which allowed claim would be treated in

accordance with Section 4.4 or Section 4.6 of the Modified Second Amended Joint

Chapter 11 Plan of the TPC Group, Inc. and its Debtor Affiliates [Docket No. 1281-1]

(the "Plan"), as applicable.

32.     On December 1, 2022, the Delaware Bankruptcy Court entered Findings of Fact,

Conclusions of Law and Order Confirming Modified Second Amended Joint Chapter 11 Plan of

TPC Group, Inc. and Its Debtor Affiliates (the "Confirmation Order") [Docket No. 1281]),

thereby confirming the "Plan.

33.     On December 16, 2022, the effective date of the Plan occurred, and the Defendant

emerged from Chapter 11.

34.     Paragraph 65 of the Confirmation Order provides that notwithstanding any

provision to the contrary, nothing in the Confirmation documents shall discharge, release, impair,

enjoin, or otherwise preclude any liability to any governmental unit: (i) that is not, or does not

constitute a "claim" (as defined in section 101(27) of the Bankruptcy Code); (ii) arising after the

effective date; (iii) under any police or regulatory law to which any entity is subject as the owner

or operator of property after the effective date; (iv) that is nondischargeable under 18 U.S.C.

§ 3613 or constitutes a federal criminal proceeding; (v) of any entity other than a debtor; or (vi)

that is a right of setoff or recoupment.

35.     Paragraph 66 of the Confirmation Order provides that notwithstanding any

provision to the contrary, the reorganized debtor shall continue to be bound by (i) the

Administrative Order and (ii) that TPC's obligations under the Settlement Term Sheet, shall

remain in effect and shall not be discharged.

36.     Paragraph 67 of the Confirmation Order provides that notwithstanding any

provision to the contrary, any Claim asserted by the EPA in the Chapter 11 Case shall be

reconciled by the reorganized debtor, subject, solely to the extent such reconciliation results in an allowed general unsecured Claim, to the consent of the General Unsecured Claims Trustee, which consent shall not be unreasonably withheld, conditioned, or delayed.

37.     The United States' enforcement of environmental laws enacted to protect public health and safety is a classic exercise of police and regulatory authority.  The injunctive relief sought here requires the Defendant to take actions to comply with Section 112(r)(1) and 112(r)(7) of the Act, 42 U.S.C. §§ 7412(r)(1) and (r)(7), and the 40 C.F.R. Part 68, to prevent the accidental release and to minimize the consequences of any such release of any regulated or other extremely hazardous substance to public health and the environment.   Any judgment for civil penalties obtained against the Defendant in this action will be treated as an general unsecured claim pursuant to the Plan.

## GENERAL ALLEGATIONS

## PORT NECHES FACILITY

38.     At all times relevant to this Complaint, the Defendant owned and operated the Port Neches Facility, located at 2102 Spur 136, Port Neches, Texas, that is the subject of this action.

39.     The Port Neches Facility is located on approximately 218 acres of land in the eastern section of the city of Port Neches, approximately 20 miles inland from the Gulf of Mexico.

40.     The Port Neches Facility was constructed in 1943 and began operations in February 1944.

41.     When operating, the Port Neches Facility had more than 175 employees and a combined production capacity of more than 900 million pounds per year.

### *Prior to the PNO Explosion*

42.     Prior to the PNO Explosion, the Port Neches Facility produced butadiene and raffinates.

43.     Prior to the PNO Explosion, the Port Neches Facility consisted of buildings, structures, and equipment belonging to the same industrial group and located on contiguous properties all belonging to Defendant. Prior to the PNO Explosion, the Port Neches Facility was a "stationary source" as that term is defined by Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C), and the regulation at 40 C.F.R. § 68.3.

44.     Prior to the PNO Explosion, activities at the Port Neches Facility involved the production, processing, handling or storing of chlorine and flammable mixtures consisting of ethane, 1-butene, propylene [1-propene], 2-methylpropene [1-propene, 2-methyl-], 2-methyl-1-butene, vinyl acetylene [1-buten-3-yne], propane, propyne [1-propyne], 2-butene-trans [2-butene, (E)], isobutane [propane, 2-methyl], 3-methyl-1-butene, 2-butene-cis, butane, 1,3-butadiene, ethyl acetylene [1-butyne], hydrogen, isopentane [butane, 2-methyl-], methane, pentane, and methyl ether [methane, oxybis-] (hereinafter the "PNO Regulated Substances").

45.     The PNO Regulated Substances are each a substance listed pursuant to Section 112(r)(3) of the Act, 42 U.S.C. § 7412(r)(3).

46.     From the time Defendant first produced, processed, handled, or stored any substance listed pursuant to Section 112(r)(3) of the Act, 42 U.S.C. § 7412(r)(3), Defendant was subject to the requirements of the General Duty Clause in Section 112(r)(1) of the Act, 42 U.S.C. § 7412(r)(1).

47.     Prior to the PNO Explosion, activities at the Port Neches Facility involved the use, storage, manufacturing, handling, or on-site movement of the PNO Regulated Substances.

48.    The PNO Regulated Substances are each a "regulated substance" as that term is defined by pursuant to Section 112(r)(2)(B) of the CAA, 42 U.S.C. § 7412(r)(2)(B), and the regulation at 40 C.F.R. § 68.3.

49.    Prior to the PNO Explosion, Defendant's activities involving the use, storage, manufacturing, handling, or on-site movement of the PNO Regulated Substances met the definition of a "process", as defined by 40 C.F.R. § 68.3.

50.    Prior to the PNO Explosion, Defendant had greater than threshold quantities of the PNO Regulated Substances, as listed in 40 C.F.R. § 68.130, in a process at the Port Neches Facility.

51.    Prior to the PNO Explosion, the process at the Port Neches Facility met the definition of "covered process", as defined by 40 C.F.R. § 68.3, because the process at the Port Neches Facility had a regulated substance present in more than a threshold quantity as determined under § 68.115.

52.    From the time Defendant first had on-site at the Port Neches Facility greater than threshold quantities of the PNO Regulated Substances, Defendant was subject to the requirements of Section 112(r)(7) of the CAA, 42 U.S.C. § 7412(r)(7), and the Risk management Program regulations, because Defendant was the owner and operator of a stationary source that had more than a threshold quantity of a regulated substance in a process.

53.    Prior to the PNO Explosion, the covered process at the Port Neches Facility did not meet the requirements of Program 1 as set forth in 40 C.F.R. § 68.10(g), was in the NAICS 32511 – Petroleum Manufacturing, and was subject to the OSHA process safety management standard, meeting the Program 3 eligibility requirements pursuant to 40 C.F.R. § 68.10(i).

54.     From the time Defendant first had on-site at the Port Neches Facility greater than a threshold quantity of the PNO Regulated Substances in a process and met the Program 3 eligibility requirements of 40 C.F.R. § 68.10(i), Defendant was required to comply with the Program 3 requirements set forth in 40 C.F.R. § 68.12(d).

### *PNO Explosion*

55.     On or before September 6, 2019, a dead leg formed in a butadiene transfer pipeline in the process at the Port Neches Facility.

56.     Dead legs, which are piping segments open to the process but with no flow through them, promote the formation of popcorn polymer.

57.     Popcorn polymer forms when oxygen reacts with butadiene.

58.     In a confined space, the growth of popcorn polymer can cause sufficient pressure build-up to rupture pipes and other metal parts.

59.     On November 27, 2019, the portion of the butadiene transfer pipeline with the dead leg formed on or before September 6, 2019, ruptured causing a loss of containment. The loss of containment resulted in a vapor cloud that ignited, causing an explosion and pressure wave.

60.     The Defendant declared the release from the PNO Explosion over on March 30, 2020.

### *After the PNO Explosion*

61.     The Port Neches Facility now serves primarily as a storage facility and terminal for volumes of butadiene, crude C4, and raffinate.

62.     The Port Neches Facility consists of buildings, structures, and equipment belonging to the same industrial group and located on contiguous properties all belonging to

Defendant. The Port Neches Facility is a "stationary source" as that term is defined by Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C), and the regulation at 40 C.F.R. § 68.3.

63.    Activities at the Port Neches Facility involve the processing, handling, and storing of flammable mixtures consisting of ethane, propyne [1-propyne], methyl ether [methane, oxybis-], hydrogen, 2-butene-cis, isopentane [butane, 2-methyl-], methane, 2-butene-trans [2-butene, (E)], 1-butene, propylene [1-propene], 2-methylpropene [1-propene, 2-methyl-], isobutane [propane, 2-methyl], propane, 1,3-butadiene, 3-methyl-1-butene, 2-methyl-1-butene, vinyl acetylene [1-buten-3-yne], butane, ethyl acetylene [1-butyne], and pentane (hereinafter the "flammable mixtures").

64.    The substances in the flammable mixtures are each a substance listed pursuant to Section 112(r)(3) of the Act, 42 U.S.C. § 7412(r)(3).

65.    After the PNO Explosion, Defendant has continued to be subject to the requirements of the General Duty Clause in Section 112(r)(1) of the Act, 42 U.S.C. § 7412(r)(1), because Defendant has continued to handle and/or store substances listed pursuant to Section 112(r)(3) of the Act, 42 U.S.C. § 7412(r)(3).

66.    Defendant's activities at the Port Neches Facility involve the use, storage, handling, or on-site movement of the flammable mixtures.

67.    The flammable mixtures are made up of "regulated substances" as that term is defined by Section 112(r)(2)(B) of the Act, 42 U.S.C. § 7412(r)(2)(B), and the regulation at 40 C.F.R. § 68.3.

68.    Defendant's activities at the PNO Facility involve the use, storage, handling, and/or on-site movement of the flammable mixtures, meeting the definition of a "process", as defined by 40 C.F.R. § 68.3.

69.     Defendant has greater than threshold quantities of the flammable mixtures, as listed in 40 C.F.R. § 68.130 and determined pursuant to 40 C.F.R. § 68.115(b)(3), in a process at the Port Neches Facility.

70.     After the PNO Explosion, the process at the Port Neches Facility has continued to meet the definition of "covered process", as defined by 40 C.F.R. § 68.3, because the process had a regulated substance present in more than a threshold quantity as determined under § 68.115.

71.     After the PNO Explosion, Defendant has continued to be subject to the requirements of Section 112(r)(7) of the CAA, 42 U.S.C. § 7412(r)(7), and the Risk management Program regulations, because Defendant was the owner and operator of a stationary source that had more than a threshold quantity of a regulated substance in a process.

72.     After the PNO Explosion, the covered processes at the Port Neches Facility have continued to meet the Program 3 eligibility requirements pursuant to 40 C.F.R. § 68.10(i) because the covered process did not meet the requirements of Program 1 as set forth in 40 C.F.R. § 68.10(g) and continues to be subject to the OSHA process safety management standard.

73.     After the PNO Explosion, Defendant continues to be required to comply with the Program 3 requirements set forth in 40 C.F.R. § 68.12(d) because Defendant has on-site at the Port Neches Facility greater than a threshold quantity of the flammable mixture in a process and continues to meet the Program 3 eligibility requirements set forth in 40 C.F.R. § 68.10(i).

**Process Hazard Analysis**

74.     On August 30, 2016, the Defendant completed a revalidation of the process hazard analysis ("PHA") for the butadiene purification section at the Port Neches Facility. However, at the time of the PNO Explosion, November 27, 2019, the Defendant had not resolved

five of the PHA findings and had resolved only two of the sixteen findings on or before the target

due date set by the Defendant.

### Operating Procedures

75.    From on or about August 27, 2019, to November 27, 2019, the Defendant

instructed operators to use steam and water to unplug pipes and valves blocked with popcorn

polymer in covered process without the development of written operating procedures for safely

conducting the activity.

76.    From on or before September 6, 2019, to November 27, 2019, the Defendant

failed to implement written operating procedures, including S4D4 A/B Startup Procedure after

Repair and Dead Legs in High Purity Butadiene Service, to flush and fill a dead leg in the

butadiene production process, which could have prevented the PNO Explosion.

77.    From on or before September 6, 2019, to November 27, 2019, the Defendant

failed to develop and implement operating procedures that provided clear instructions for

temporary operations when removing a primary pump (S4G7) from service and using a spare

pump.

78.    From at least November 23, 2016, to November 27, 2019, the Defendant failed to

include the conditions under which emergency shutdown is required in at least five written

standard operating procedures, including S4D4 A/B Emergency Shutdown Procedure, N4D7

Emergency Shutdown Procedure, S2D1 Emergency Shutdown Procedure, Butadiene Plant

Emergency Shutdown Procedure, and S2 Group Emergency Shutdown S2D4, 4, 14 & 12.

79.    From May 28 to November 27, 2019, the Defendant failed to update operating

procedures, including the S4D4 Shutdown Procedure and the N4D7 Operating Guidelines Post

Fractionation Service Procedure, that included steps involving a piece of equipment, the N5D1

Tower, that was out of service according to Management of Change ("MOC") 4194 and the PNO Popcorn Polymer Elimination and N5D1 Decommissioning Project.

### Refresher Training

80.    From at least November 23, 2016, to November 27, 2019, the Defendant failed to provide refresher training as often as necessary to employees involved in operating the butadiene finishing process to assure that the employees understood and adhered to operating procedures involving dead legs.

### Mechanical Integrity

81.    From at least November 23, 2016, to November 27, 2019, the Defendant failed to perform inspections and tests on the S4D2 MTBE South Tower, pressure vessel process equipment.  During the PNO Explosion, the S4D2 pressure vessel process equipment lifted off its foundation and landed on the tank farm.

82.     From at least November 23, 2016, to November 27, 2019, the Defendant failed to perform inspections and tests on the N4D2 MTBE North Tower, pressure vessel process equipment.

83.    From at least November 23, 2016, to November 27, 2019, the Defendant failed to perform inspections and tests or only performed grossly inadequate inspections and tests on the S4D4B Tower, pressure vessel process equipment.

84.    From at least November 23, 2016, to November 27, 2019, the Defendant failed to perform inspections and tests on piping process equipment following recognized and generally accepted good engineering practices, including any fitness for service assessments reports for C0105, the piping involved in the PNO Explosion.

85.     From at least November 23, 2016, to November 27, 2019, the Defendant failed to implement its Piping Classes and TML Procedure for external ultrasonic thickness measurements and external visual inspections for the C0105, the piping involved in the PNO Explosion.

86.     From at least November 23, 2016, to November 27, 2019, the Defendant failed to inspect and test C0105 piping process equipment at a frequency consistent with applicable manufactures' recommendations and good engineering practices, and more frequently as determined by prior operating experience, including a 1999 pipe rupture resulting from popcorn polymer fouling that occurred before the PNO Explosion.

87.     Process safety information, including reactivity data and process chemistry (§ 68.65(b)(4) and (c)(ii)), demonstrates that butadiene is a highly reactive substance known to form popcorn polymer in the presence of oxygen.

88.     The Defendant recognized dead legs as a hazard known to foster the formation of popcorn polymer.

89.     The Defendant knew or should have known that an operational dead leg in place for a minimum of 82 days and up to 154 days would create a reaction resulting in a deficiency in the C0105 piping process equipment requiring correction.

90.     The Defendant failed to correct deficiencies in the growth of popcorn polymer in the C0105 piping process equipment that expanded outside acceptable limits, as defined by substance reactivity and process chemistry safety information, before further use or in a safe and timely manner when necessary means are taken to assure safe operation.

91.     From at least November 23, 2016, Defendant utilized a butadiene analyzer, A13776, a type of control process equipment, to monitor the concentrations of butadiene in the bottom product of the S4D4B process tower.

92.    The Defendant's operating limits specified that the concentration of butadiene should be below 20% of the volume of the S4D4B bottom product.  According to Defendant's PHA, at 50% volume, butadiene would become unstable and may auto decompose and result in an explosion and release.  Data from two weeks before the PNO Explosion shows higher than normal levels of butadiene each day, including levels above 50% volume on 10 days before the PNO Explosion.

93.    From at least November 23, 2016, to November 27, 2019, the Defendant failed to correct deficiencies in the butadiene analyzer, A13776, before further use or in a safe and timely manner when necessary means are taken to assure safe operation.

**Management of Change**

94.    From on or before September 6, 2019, the Defendant failed to implement a written management of change procedure when it removed S4G7, a primary pump for repairs, which resulted in the formation of a dead leg and popcorn polymer in the C0195 transfer line between S4D4 and S4D4B, two connected process towers.

95.    From at least November 23, 2016, to November 27, 2019, the Defendant failed to implement written procedures to manage changes to process equipment, specifically completing management of change procedures to remove equipment from service.

96.    On April 1, 2009, the Defendant initiated a management of change ("MOC"), referred to as MOC #501 to decommission and isolate the North MTBE unit process vessel. MOC #501 was marked as completed July 22, 2015.  However, on April 5, 2018, the Defendant indicated that certain changes still were not completed.

97.    On September 10, 2018, the Defendant initiated MOC #3739 to isolate and complete the decommissioning of related equipment from MOC #501.  However, MOC #3739 still was not complete at the time of the PNO Explosion.

98.    On June 5, 2019, the Defendant initiated MOC #4297 to review equipment in MOC #501 and blind and air gap the North MTBE unit to remove the process vessel from service. However, MOC #4297 still was not complete at the time of the PNO Explosion.

### Pre-Startup Review

99.    On or before September 6, 2019, the Defendant failed to perform a pre-startup safety review ("PSSR") when removing a primary pump, S4G7, from service for repairs, which resulted in the formation of a dead leg in the C0195 transfer line between S4D4 and S4D4B, that required changes to process safety information including reactivity data, process chemistry, and piping and instrument diagrams ("P&ID's").

### Management of Change

100.    On March 6, 2017, the Defendant initiated MOC #2639 to add valves and a bleeder to the suction and discharge of S4G7A, a pump in the process.  Although the change occurred around March 30, 2017, the Defendant failed to obtain a number of authorizations until after the change was completed.

101.    From at least November 23, 2016, to November 27, 2019, prior to the start-up of the affected part of the process, the Defendant failed to train employees involved in operating the process when changes were made by MOC #4602 and MOC #4594 to install temporary filters at the bottom of the S4D4B tower and N4D7 pump to collect popcorn polymer.

### Pre-Startup Review

102.    On March 6, 2017, TPC initiated MOC #2639 to add valves and a bleeder to the suction and discharge of S4G7A, a pump in the process, which was significant enough to require a change in process safety information.  Although the change occurred around March 30, 2017, the Defendant failed to perform a PSSR.

### Compliance Audits

103.    From at least November 23, 2016, to October 31, 2018, the Defendant failed to promptly determine and document an appropriate response to certain compliance audit findings from a compliance audit conducted on April 13-17, 2015, and failed to document those deficiencies had been corrected.

104.    From on or before June 8, 2018, to November 27, 2019, the Defendant failed to promptly determine and document an appropriate response to compliance audit findings from a compliance audit conducted on April 9-12, 2018.

### General Duty Clause

105.    From on or before September 6, 2019 to November 27, 2019, the Defendant failed to identify hazards that may result from a release of butadiene caused by the development of an operational dead leg in C0105, the piping involved in the PNO Explosion, and formation of popcorn polymer, using appropriate hazard assessment techniques.

106.    As a result of the Defendant's failure to identify such hazards, accidental releases of regulated and extremely hazardous substances occurred at the Port Neches Facility.

107.    Industry guidance recommends avoiding dead legs and infrequently used lines in equipment design to reduce the risks associated with popcorn polymer formation.

108.    From on or before September 6, 2019, the Defendant designed the Port Neches Facility to have an operational dead leg for at least 82 days and up to 154 days, without altering

the design of the process to include a valve or other safety control system, which led to the formation of popcorn polymer in pipeline C0105, causing the pipeline to rupture, loss of containment, and the PNO Explosion on November 27, 2019.

109.    As a result of the Defendant's failure to design a safe facility taking such steps as necessary to prevent accidental releases, accidental releases of regulated and extremely hazardous substances occurred at the Port Neches Facility.

110.    From on or before September 6, 2019, to November 27, 2019, the Defendant failed to take steps to maintain the piping system, including the flushing, purging, or sealing of the C0105 pipeline to minimize the formation of popcorn polymer on dead legs at the Port Neches Facility.

111.    As a result of the Defendant's failure to maintain a safe facility taking such steps as are necessary to prevent of accidental releases, accidental releases of regulated and extremely hazardous substances occurred at the Port Neches Facility.

112.    From November 27, 2019, to March 30, 2020, the Defendant failed to minimize the consequences of the accidental release of regulated and extremely hazardous substances after a rupture in pipeline C0105 from the formation of popcorn polymer formation, resulting in a vapor cloud explosion.

113.    As a result of the Defendant's failure to minimize the consequences of the accidental releases of butadiene at the Port Neches Facility, significant off-site impacts occurred, including the evacuation of 5,000 people; orders requiring 13,000 to shelter-in-place; more than $150 million in property damages; fish kills, water contamination, soil contamination; and the ultimate release of more than 11 million pounds of extremely hazardous substances from the Port Neches Facility.

## HOUSTON FACILITY

114.    At all times relevant to this Complaint, the Defendant has owned and operated the Houston Facility, located at 8600 Park Place Boulevard, Houston, Texas, that is the subject of this action.

115.    The Houston Facility is located on approximately 256 acres near the Houston Ship Channel in Houston's east end.

116.    The Houston Facility construction began in 1942 and production began in 1944.

117.    The Houston Facility has approximately 300 full-time employees and 125 contractors.

118.    The Houston Facility has a combined production capacity of more than 1.5 billion pounds per year and has filed permit amendments to expand its butadiene production capacity an additional 25 percent.

119.    Defendant produces butadiene, butene-1, raffinate, isobutylene, diisobutylene, and polyisobutylene at the Houston Facility.

120.    The Houston Facility consists of buildings, structures, and equipment belonging to the same industrial group and located on contiguous properties all belonging to Defendant. The Houston Facility is a "stationary source" as that term is defined by Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C), and the regulation at 40 C.F.R. § 68.3.

121.    Defendant's activities at the Houston Facility involve the use, storage, manufacturing, handling, and/or on-site movement of 1-butene, isobutane, ammonia (conc 20% or greater), 1,3-butadiene, and flammable mixtures consisting of butane, 1-butene, propane, 2-butene, 1,3-butadiene, pentane, 2-methylpropene, isopentane, and chlorine (hereinafter the "HNO Regulated Substances").

122.    The HNO Regulated Substances are each a "regulated substance" as that term is defined Section 112(r)(2)(B) of the Act, 42 U.S.C. § 7412(r)(2)(B), and the regulation at 40 C.F.R. § 68.3.

123.    Defendant's activities at the Houston Facility involving the use, storage, manufacturing, handling, and/or on-site movement of the HNO Regulated Substances meet the definition of a "process", as defined by 40 C.F.R. § 68.3.

124.    Defendant has greater than threshold quantities of the HNO Regulated Substances, as listed in 40 C.F.R. § 68.130 and determined pursuant to 40 C.F.R. § 68.115(b)(3), in a process at the Houston Facility.

125.    The process at the Houston Facility meets the definition of "covered process", as defined by 40 C.F.R. § 68.3, because the process had a regulated substance present in more than a threshold quantity as determined under § 68.115.

126.    From the time Defendant first had on-site at the Houston Facility greater than threshold amounts of the HNO Regulated Substances, Defendant was subject to the requirements of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7), and the Risk Management Program regulations, because Defendant was the owner and operator of a stationary source that had more than a threshold quantity of a regulated substance in a process.

127.    The covered process at the Houston Facility does not meet the requirements of Program 1 as set forth in 40 C.F.R. § 68.10(g), is in the NAICS 32511 – Petroleum Manufacturing, and is subject to the OSHA process safety management standard; therefore, meeting the Program 3 eligibility requirements pursuant to 40 C.F.R. § 68.10(i).

128.    From the time Defendant first had on-site at the Houston Facility greater than a threshold quantity of the HNO Regulated Substances in a process and met the Program 3

eligibility requirements of 40 C.F.R. § 68.10(i), Defendant was required to comply with the

Program 3 requirements set forth in 40 C.F.R. § 68.12(d).

## Process Safety Information

129.    During an inspection conducted April 3-5, 2018, EPA requested documentation

demonstrating that older equipment designed and constructed in accordance with codes and

standards no longer in general use, is designed, maintained, inspected, tested, and operating in a

safe manner.

130.    On October 28, 2020, EPA sent a request for information to the Defendant under

Section 114 of the Act, 42 U.S.C. § 7414, requiring the Defendant to provide a list of equipment

designed and constructed in accordance with codes, standards, or practices no longer in general

use and documentation demonstrating that the equipment is designed, maintained, inspected,

tested, and operating in a safe manner.

131.    During the April 2018 inspection and on December 15, 2020, the Defendant

provided a written response that it does not maintain a list of specific equipment still in use that

was designed in accordance with standards that are no longer current and did not provide

documentation demonstrating a determination that the equipment is designed, maintained,

inspected, tested, and operating in a safe manner.

## Process Hazard Analysis ("PHA")

132.    On November 15, 2015, the Defendant completed a PHA performed on the Flare

Unit process at the Houston Facility. However, the Defendant has failed to promptly resolve the

recommendations made, document the resolutions, and address all findings and

recommendations.

133.    On April 24, 2017, the Defendant completed a PHA performed on the North Absorber process at the Houston Facility.  However, the Defendant has failed to promptly resolve the recommendations made, document the resolutions, or document actions for pending resolutions, and address all findings and recommendations.

134.    On June 29, 2017, the Defendant completed a PHA performed on the PIB 1 & 2 process at the Houston Facility.  However, the Defendant has failed to promptly resolve the recommendations made, document the resolutions, or document actions for pending resolutions.

135.    On July 17, 2017, the Defendant completed a PHA performed on the Railcar and Truck Loading process at the Houston Facility.  However, the Defendant has failed to establish a system to promptly address the team's findings and recommendations, or document any actions taken or a schedule for actions to be completed.

136.    On November 8, 2017, the Defendant completed a PHA performed on the Dehydo No. 2 Reactor System process at the Houston Facility.  However, the Defendant has failed to promptly resolve the recommendations made, document the resolutions, or document actions for pending resolutions.

137.    On April 18, 2018, the Defendant completed a PHA performed on the HPIB/DIB process at the Houston Facility.  However, the Defendant has failed to promptly resolve the recommendations made, document the resolutions, or document actions for pending resolutions.

138.    On November 14, 2018, the Defendant completed a PHA performed on the BD Finishing process at the Houston Facility.  However, the Defendant has failed to promptly resolve the recommendations made, document the resolutions, or document actions for pending resolutions.

139.    On November 14, 2018, the Defendant completed a PHA performed on the Docks – Houston process at the Houston Facility.  However, the Defendant has failed to promptly resolve the recommendations made, document the resolutions, or document actions for pending resolutions, and address all findings and recommendations.

140.    On November 28, 2018, the Defendant completed a PHA performed on the Dehydo No. 2 Comp/Absorber process at the Houston Facility.  However, the Defendant has failed to promptly resolve the recommendations made, document the resolutions, or document actions for pending resolutions.

141.    On January 23, 2019, the Defendant completed a PHA performed on the MTBE process at the Houston Facility.  However, the Defendant has failed to promptly resolve the recommendations made, document the resolutions, or document actions for pending resolutions.

142.    On January 28, 2019, the Defendant completed a PHA performed on the B-1 Raffinate process at the Houston Facility.  However, the Defendant has failed to promptly resolve the recommendations made, document the resolutions, or document actions for pending resolutions.

143.    On May 29, 2019, the Defendant completed a PHA performed on the Ultra Unit process at the Houston Facility.  However, the Defendant has failed to promptly resolve the recommendations made, document the resolutions, or document actions for pending resolutions, and address all findings and recommendations.

144.    On May 29, 2019, the Defendant completed a PHA performed on the VAU process at the Houston Facility.  However, the Defendant has failed to promptly resolve the recommendations made, document the resolutions, or document actions for pending resolutions.

145.    On June 12, 2019, the Defendant completed a PHA performed on the Crude BD process at the Houston Facility.  However, the Defendant has failed to promptly resolve the recommendations made, document the resolutions, or document actions for pending resolutions.

146.    On June 19, 2019, the Defendant completed a PHA performed on the BHY Reactors process at the Houston Facility.  However, the Defendant has failed to promptly resolve the recommendations made, document the resolutions, or document actions for pending resolutions.

147.    On June 28, 2019, the Defendant completed a PHA performed on the VOC process at the Houston Facility.  However, the Defendant has failed to promptly resolve the recommendations made, or document actions for pending resolutions.

148.    On October 9, 2019, the Defendant completed a PHA performed on the Demin Unit process at the Houston Facility.  However, the Defendant has failed to promptly resolve the recommendations made, document the resolutions, or document actions for pending resolutions.

149.    On October 9, 2019, the Defendant completed a PHA performed on the Flare and Vent Recovery process at the Houston Facility.  However, the Defendant has failed to promptly resolve the recommendations made, document the resolutions, or document actions for pending resolutions, and address all findings and recommendations.

150.    On November 26, 2019, the Defendant completed a PHA performed on the Tank Farm process at the Houston Facility.  However, the Defendant has failed to promptly establish a system to promptly address the team's findings and recommendations, or document any actions taken or a schedule for actions to be completed.

151.    On January 8, 2020, the Defendant completed a PHA performed on the Furfural process at the Houston Facility.  However, the Defendant has failed to resolve the

recommendations made, document the resolutions, or document actions for pending resolutions, and address all findings and recommendations.

152.    On March 19, 2020, the Defendant completed a PHA performed on the DMF Terminal process at the Houston Facility.  However, the Defendant has failed to promptly resolve the recommendations made, document the resolutions, or document actions for pending resolutions.

153.    On June 22, 2020, the Defendant completed a PHA performed on the Boilers and Condensate process at the Houston Facility.  However, the Defendant has failed to promptly resolve the recommendations made, document the resolutions, or document actions for pending resolutions.

### Operating Procedures

154.    On December 5, 2016, the Defendant failed to implement operating procedures for safely conducting activities involved in a covered process when an employee cleared process equipment to the atmosphere, resulting in the release of 1-3 butadiene.

155.    On April 6, 2018, the Defendant failed to implement operating procedures for safely conducting activities involved in a covered process when the wrong material was placed into a frac tank and a subsequent over pressurization caused rupturing of the tank and a fire.

156.    On March 1, 2019, the Defendant failed to implement operating procedures for safely conducting activities involved in a covered process when an employee failed to close a bypass valve during the lineup of process equipment resulting in material venting when the transfer of material was initiated.

157.    On May 3, 2020, the Defendant failed to implement operating procedures for safely conducting activities involved in a covered process when a valve was left open while loading material, causing liquids to enter the process and a release.

### Refresher Training

158.    On December 5, 2016, an employee cleared process equipment to the atmosphere, resulting in the release of 1-3 butadiene for one hour.

159.    Prior to the incident, the employee was on a performance improvement plan with a focused training effort on following instructions.

160.    Prior to the incident, the Defendant failed to provide refresher training to the employee involved in operating the process to assure that the employee understood and would adhere to the operating procedure.

161.    From October 29, 2017, to July 23, 2018, on at least 19 occasions the Defendant failed to provide refresher training at least every three years to employees involved in operating a process to assure that the employees understood and adhered to the current operating procedures of the process.

162.    From at least November 23, 2016, to the present, on at least 11 occasions the Defendant failed to provide refresher training to employees involved in operating a process to assure that the employees understood and adhered to the current operating procedures of the process.

### Mechanical Integrity

163.    On April 23, 2017, the Defendant failed to assure that a control valve was suitable for the process application for which it was used causing a tube leak and resulting in a release of 1,3-butadiene.

164.    On May 1, 2017, the Defendant failed to assure that a nitrogen flow regulator was suitable for the process application for which it was used resulting in a release of 1,3-butadiene, isobutylene, and butene.

165.    On June 5, 2019, a compressor that had been repaired many times over the years failed, resulting in a release.

166.    The Defendant failed to correct equipment deficiencies in the compressor that were outside acceptable limits before further using the compressor or taking necessary means to assure safe operation.

167.    On October 13, 2020, a loss of power caused a plant-wide shut down.

168.    During the loss of power, a differential relay failed to operate properly because it was installed improperly.

169.    The Defendant failed to perform appropriate checks and inspections to assure that the differential relay equipment was installed properly and consistent with design specifications and the manufacturer's instruction.

170.    From at least November 23, 2016, on more than 1,500 occasions, the Defendant has failed to calculate the remaining life of process equipment, or failed to record the results of such calculation, when performing inspection and tests on process equipment, expansion joints, flexible hoses, piping, safety instrumented systems, critical instrument loops, pressure vessels, storage tanks, or heat exchangers.

171.    From at least November 23, 2016, on more than 400 occasions, the Defendant's mechanical integrity tracking indicates that the Defendant failed to perform inspections on piping within five years of the last inspection on such piping.

**Management of Change**

172.    Beginning on January 9, 2020, on at least 41 occasions, the Defendant failed to implement written procedures to manage changes to process chemicals, technology, equipment, and procedures.

173.    Beginning on January 6, 2020, on numerous occasions, the Defendant's MOC procedure documentation failed to include consideration of the impact of the change on safety and health.

174.    Beginning on January 6, 2020, on numerous occasions, the Defendant failed to include the date a change was authorized or the date a change occurred.

175.    Beginning on January 6, 2020, on at least 39 occasions, the Defendant failed to train its employees on changes made to a process.

### Compliance Audits

176.    The Defendant failed to promptly determine and document an appropriate response to 25 findings in compliance audits dated January 29, 2016, and September 27, 2018, and document that deficiencies have been corrected.

### Incident Investigation

177.    On October 19, 2017, October 21, 2017, September 15, 2018, and October 18, 2018, the Defendant failed to investigate four incidents which resulted in the release of regulated substances.

178.    On at least 37 occasions from November 23, 2016, to November 17, 2020, the Defendant failed to prepare a report at the conclusion of an investigation that included the date the investigation began.

179.    For incidents dated July 22-23, 2019, which involved the release of 1,3-butadiene, 1-butene, CO, isobutane, pentane, propane, and propylene; and August 5, 2019, which involved

the release of 1,3-butadiene, 1-butene, butane, CO, isobutane; isobutylene and pentane, the Defendant failed to establish a system to promptly address and resolve the incident report findings and recommendations.

180.    On at least 13 occasions, from November 23, 2016, to the present, the Defendant failed to document investigation resolutions and corrective actions taken as a result of incident investigations.

## General Requirements

181.    The Defendant failed to update and correct the RMP to include accident history information after a frac tank over pressured and subsequently exploded resulting in a fire on April 6, 2018.

182.    The Defendant failed to update and correct the RMP to include accident history information after a lean oil pump developed a leak that led to a fire on December 27, 2018.

## FIRST CLAIM FOR RELIEF (Port Neches)
### Process Hazard Analysis
### 40 C.F.R. § 68.67(e)

183.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

184.    Pursuant to 40 C.F.R. § 68.67(e), the owner or operator is required to  establish a system to promptly address the process hazard analyses team's findings and recommendations; assure that the recommendations are resolved in a timely manner and that the resolution is documented; document what actions are to be taken; complete actions as soon as possible; develop a written schedule of when these actions are to be completed; communicate the actions to operating, maintenance and other employees whose work assignments are in the process and who may be affected by the recommendations or actions.

185.    The Defendant, as the owner and operator of the Port Neches Facility, failed to establish a system to promptly address the team's August 30, 2016, PHA findings and recommendations; assure that the recommendations are resolved in a timely manner; and complete actions as soon as possible.

186.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.67(e) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

187.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

## SECOND CLAIM FOR RELIEF (Port Neches)
### Operating Procedures
### 40 C.F.R. § 68.69(a)

188.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

189.    Pursuant to 40 C.F.R. § 68.69(a), the owner or operator is required to develop and implement written operating procedures that provide clear instructions for safely conducting activities involved in each covered process consistent with the process safety information.

190.    From on or about August 27, 2019, to November 27, 2019, the Defendant, as the owner and operator of the Port Neches Facility, failed to develop written operating procedures to provide clear instructions for safely conducting the activity of using steam and water to unplug pipes and valves blocked with popcorn polymer.

191.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.67(e) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

192.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

**THIRD CLAIM FOR RELIEF (Port Neches)**
**Operating Procedures**
**40 C.F.R. § 68.69(a)**

193.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

194.    Pursuant to 40 C.F.R. § 68.69(a), the owner or operator is required to develop and implement written operating procedures that provide clear instructions for safely conducting activities involved in each covered process consistent with the process safety information.

195.    From on or before September 6, 2019, to November 27, 2019, the Defendant, as the owner and operator of the Port Neches Facility, failed to implement written operating procedures for safely conducting activities involved in the covered process by failing to flush and fill a dead leg in the butadiene production process.

196.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.69(a) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

197.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

**FOURTH CLAIM FOR RELIEF (Port Neches)**
**Operating Procedures: Temporary Operations**
**40 C.F.R. § 68.69(a)(1)(iii)**

198.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

199.    Pursuant to 40 C.F.R. § 68.69(a)(1)(iii), the owner or operator is required to develop and implement written operating procedures that provide clear instructions for safely

conducting activities involved in each covered process consistent with the process safety information and shall address at least the following elements: (iii) temporary operations.

200.    From on or before September 6, 2019, to November 27, 2019, the Defendant, as the owner and operator of the Port Neches Facility, failed to develop and implement written operating procedures that provided clear instructions for temporary operations when removing a primary pump (S467) from service and using a spare pump.

201.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.69(a)(1)(iii) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

202.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

## FIFTH CLAIM FOR RELIEF (Port Neches)
### Operating Procedures: Emergency Shutdown
### 40 C.F.R. § 68.69(a)(1)(iv)

203.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

204.    Pursuant to 40 C.F.R. § 68.69(a)(1)(iv), the owner or operator is required to develop and implement written operating procedures that provide clear instructions for safely conducting activities involved in each covered process consistent with the process safety information and shall address at least the following elements: (iv) Emergency shutdown including the conditions under which emergency shutdown is required, and the assignment of shutdown responsibility to qualified operators to ensure that emergency shutdown is executed in a safe and timely manner.

205.    From at least November 23, 2016, to November 27, 2019, the Defendant, as the owner and operator of the Port Neches Facility, failed to develop written operating procedures

that included the conditions under which emergency shutdown is required in at least five written standard operating procedures.

206.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.69(a)(1)(iv) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

207.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

### SIXTH CLAIM FOR RELIEF (Port Neches)
**Operating Procedures: Updates**
**40 C.F.R. § 68.69(c)**

208.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

209.    Pursuant to 40 C.F.R. § 68.69(c), the owner or operator is required to review its operating procedures as often as necessary to assure that they reflect current operating practice, including changes that result from changes in process chemicals, technology, and equipment, and changes to stationary sources.

210.    From May 28, 2019 to November 27, 2019, the Defendant, as the owner and operator of the Port Neches Facility, failed to review its operating procedures as often as necessary to assure the procedures reflected changes to the equipment by failing to update the S4D4 Shutdown Procedure and the N4D7 Operating Guidelines Post Fractionation Service Procedure, that included steps involving a piece of equipment, the N5D1 Tower, that was out of service according to MOC 4194 and the PNO Popcorn Polymer Elimination and N5D1 Decommissioning Project.

211.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.69(c) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

212.     Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

## SEVENTH CLAIM FOR RELIEF (Port Neches)
### Refresher Training
### 40 C.F.R. § 68.71(b)

213.     Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

214.     Pursuant to 40 C.F.R. § 68.71(b), the owner or operator is required to provide refresher training at least every three years, and more often if necessary, to each employee involved in operating a process to assure that the employee understands and adheres to the current operating procedures of the process

215.     From at least November 23, 2016, to November 27, 2019, the Defendant, as the owner and operator of the Port Neches Facility, failed to provide refresher training as often as necessary to employees involved in operating the butadiene finishing process to assure that the employees understood and adhered to operating procedures involving dead legs.

216.     As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.71(b) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

217.     Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

## EIGHTH CLAIM FOR RELIEF (Port Neches)
### Mechanical Integrity – Inspection & Testing
### 40 C.F.R. § 68.73(d)(1)

218.     Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

219.    Pursuant to 40 C.F.R. § 68.73(d)(1), inspections and tests are required to be performed on process equipment. The regulation at 40 C.F.R. § 68.73(a)(1) includes pressure vessels in the definition for process equipment.

220.    From at least November 23, 2016, to November 27, 2019, the Defendant, as the owner and operator of the Port Neches Facility, failed to perform inspections and tests on the S4D2 MTBE South Tower, pressure vessel process equipment.  During the PNO Explosion, S4D2 lifted offed off its foundation and landed on the tank farm.

221.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.71(d)(1) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

222.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

### NINTH CLAIM FOR RELIEF (Port Neches)
**Mechanical Integrity – Inspection & Testing**
**40 C.F.R. § 68.73(d)(1)**

223.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

224.    Pursuant to 40 C.F.R. § 68.73(d)(1), inspections and tests are required to be performed on process equipment. The regulation at 40 C.F.R. § 68.73(a)(1) includes pressure vessels in the definition for process equipment.

225.    From at least November 23, 2016, to November 27, 2019, the Defendant, as the owner and operator of the Port Neches Facility, failed to perform inspections and tests on the N4D2 MTBE North Tower, pressure vessel process equipment.

226.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.71(d)(1) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

227.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

## TENTH CLAIM FOR RELIEF (Port Neches)
### Mechanical Integrity – Inspection & Testing
### 40 C.F.R. § 68.73(d)(1)

228.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

229.    Pursuant to 40 C.F.R. § 68.73(d)(1), inspections and tests are required to be performed on process equipment. The regulation at 40 C.F.R. § 68.73(a)(1) includes pressure vessels in the definition for process equipment.

230.    From at least November 23, 2016, to November 27, 2019, the Defendant, as the owner and operator of the Port Neches Facility, failed to perform inspections and tests or only grossly inadequate inspections and tests on the S4D4B Tower, pressure vessel process equipment.

231.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.71(d)(1) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

232.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

## ELEVENTH CLAIM FOR RELIEF (Port Neches)
### Mechanical Integrity – Inspection & Testing
### 40 C.F.R. § 68.73(d)(2)

233.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

234.    Pursuant to 40 C.F.R. § 68.73(d)(2), inspection and testing procedures are required to follow recognized and generally accepted good engineering practices.

235.    From at least November 23, 2016, to November 27, 2019, the Defendant, as the owner and operator of the Port Neches Facility, failed to perform inspections and tests on piping process equipment following recognized and generally accepted good engineering practices, including any fitness for service reports for C0105, the piping process equipment involved in the PNO Explosion.

236.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.71(d)(2) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

237.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

## TWELFTH CLAIM FOR RELIEF (Port Neches)
### Mechanical Integrity – Written Procedures
### 40 C.F.R. § 68.73(b)

238.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

239.    Pursuant to 40 C.F.R. § 68.73(b), the owner or operator is required to establish and implement written procedures to maintain the ongoing integrity of process equipment.

240.    From at least November 23, 2016, to November 27, 2019, the Defendant, as the owner and operator of the Port Neches Facility, failed to implement its Piping Classes and TML Procedure for external ultrasonic thickness measurements and external visual inspections to maintain the ongoing integrity of the C0105 piping process equipment involved in the PNO Explosion.

241.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.73(b) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

242.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

### THIRTEENTH CLAIM FOR RELIEF (Port Neches)
**Mechanical Integrity – Inspection & Testing**
**40 C.F.R. § 68.73(d)(3)**

243.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

244.    Pursuant to 40 C.F.R. § 68.73(d)(3), the frequency of inspections and tests of process equipment is required to be consistent with applicable manufacturers' recommendations and good engineering practices, and more frequently if determined to be necessary by prior operating experience.

245.    From at least November 23, 2016, to November 27, 2019, the Defendant, as the owner and operator of the Port Neches Facility, failed to perform inspections and tests of piping process equipment at a frequency consistent with applicable manufacturers' recommendations and good engineering practices, and more frequently when determined to be necessary by prior operating experience when it failed to inspect and test the C0105 piping, despite prior operating experience including a 1999 pipe rupture resulting from popcorn polymer and polymer fouling that occurred before the PNO Explosion.

246.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.73(d)(3) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

247.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

### FOURTEENTH CLAIM FOR RELIEF (Port Neches)
**Mechanical Integrity – Equipment Deficiencies**

**40 C.F.R. § 68.73(e)**

248.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

249.    Pursuant to 40 C.F.R. § 68.73(e), the owner or operator is required to correct deficiencies in equipment that are outside acceptable limits (defined by the process safety information in § 68.65) before further use or in a safe and timely manner when necessary means are taken to assure safe operation.

250.    The Defendant, as the owner and operator of the Port Neches Facility, failed to correct deficiencies in the growth of popcorn polymer in the C0105 piping equipment that expanded outside acceptable limits, as defined by § 68.65), before further use or in a safe and timely manner when necessary means are taken to assure safe operation.

251.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.73(e) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

252.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

**FIFHTHEENTH CLAIM FOR RELIEF (Port Neches)**
**Mechanical Integrity – Equipment Deficiencies**
**40 C.F.R. § 68.73(e)**

253.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

254.    Pursuant to 40 C.F.R. § 68.73(e), the owner or operator is required to correct deficiencies in equipment that are outside acceptable limits (defined by the process safety information in § 68.65) before further use or in a safe and timely manner when necessary means are taken to assure safe operation.

255.    From at least November 23, 2016, to November 27, 2019, the Defendant, as the owner and operator of the Port Neches Facility, failed to correct deficiencies in the butadiene analyzer, A13776, a type of control process equipment, that were outside acceptable limits, as defined by § 68.65, before further use or in a safe and timely manner when necessary means are taken to assure safe operation.

256.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.73(e) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

257.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

## SIXHTEENTH CLAIM FOR RELIEF (Port Neches)
### Management of Change
### 40 C.F.R. § 68.75(a)

258.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

259.    Pursuant to 40 C.F.R. § 68.75(a), the owner or operator is required to establish and implement written operating procedures to manage changes (except for "replacements in kind") to process chemicals, technology, equipment, and procedure; and changes to stationary sources that affect a covered process.

260.    From on or before September 6, 2019, the Defendant, as the owner and operator of the Port Neches Facility, failed to implement written procedures to manage changes to process equipment when it removed S4G7, a primary pump, for repairs, which resulted in the formation of a dead leg in the C0195 transfer line between S4D4 and S4D4B, two connected process towers, which allowed for the formation of popcorn polymer in a covered process.

261.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.75(a) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

262.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

### SEVENTEENTH CLAIM FOR RELIEF (Port Neches)
**Management of Change**
**40 C.F.R. § 68.75(a)**

263.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

264.    Pursuant to 40 C.F.R. § 68.75(a), the owner or operator is required to establish and implement written operating procedures to manage changes (except for "replacements in kind") to process chemicals, technology, equipment, and procedure; and changes to stationary sources that affect a covered process.

265.    From at least November 23, 2016, to November 27, 2019, the Defendant, as the owner and operator of the Port Neches Facility, failed to implement written procedures to manage changes to process equipment, specifically completing management of change procedures to remove equipment from service.

266.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.75(a) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

267.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

### EIGHTEENTH CLAIM FOR RELIEF (Port Neches)
**Pre-Startup Review**
**40 C.F.R. § 68.77(a)**

268.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

269.    Pursuant to 40 C.F.R. § 68.77(a), the owner or operator is required to perform a pre-startup safety review for new stationary sources and for modified stationary sources when the modification is significant enough to require a change in the process safety information.

270.    The Defendant, as the owner and operator of the Port Neches Facility,  failed to perform a PSSR when removing a primary pump, S4G7, from service for repairs on September 6, 2019, which resulted in the formation of a dead leg in the C0195 transfer line between S4D4 and S4D4B, a modification that was significant enough to require changes to process safety information including reactivity data, process chemistry, and piping and instrument diagrams ("P&ID's").

271.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.77(a) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

272.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

### NINETEENTH CLAIM FOR RELIEF (Port Neches)
**Management of Change**
**40 C.F.R. §§ 68.75(a) and 68.75(b)(5)**

273.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

274.    Pursuant to 40 C.F.R. § 68.75(a), the owner or operator is required to establish and implement written operating procedures to manage changes (except for "replacements in kind") to process chemicals, technology, equipment, and procedure; and changes to stationary sources that affect a covered process. Pursuant to 40 C.F.R. § 68.75(b)(5), the procedures shall

assure that the following considerations are addressed prior to any change: (5) Authorization requirements for the proposed change.

275.    On March 6, 2017, the Defendant, as the owner and operator of the Port Neches Facility, initiated a modification (MOC#2639) to add valves and a bleeder to the suction and discharge of the S4G7A pump, a change to process equipment.  Although the change occurred around March 30, 2017, the Defendant failed to obtain a number of authorizations for the proposed change until after the change was completed.

276.    As a result of these acts or omissions, Defendant violated 40 C.F.R. §§ 68.75(a) and 68.75(b)(5) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

277.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

## TWENTIETH CLAIM FOR RELIEF (Port Neches)
### Management of Change
### 40 C.F.R. § 68.75(c)

278.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

279.    Pursuant to 40 C.F.R. § 68.75(c), employees involved in operating a process and maintenance and contract employees whose job tasks will be affected by a change in the process are required to be informed of, and trained in, the change prior to start-up of the process or affected part of the process.

280.    From at least November 23, 2016, to November 27, 2019, the Defendant, as the owner and operator of the Port Neches Facility, failed to inform and train employees involved in operating the process of whose job tasks were affected by MOC #4602 and MOC #4595, which

concerned installing temporary filters at the bottom of the S4D4B tower and N4D7 pump to collect popcorn polymer, prior to the start-up of the process or affected part of the process.

281.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.75(c) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

282.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

## TWENTY-FIRST CLAIM FOR RELIEF (Port Neches)
### Pre-Startup Review
### 40 C.F.R. § 68.77(a)

283.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

284.    Pursuant to 40 C.F.R. § 68.77(a), the owner or operator is required to perform a pre-startup safety review for new stationary sources and for modified stationary sources when the modification is significant enough to require a change in the process safety information.

285.    On March 6, 2017, the Defendant, as the owner and operator of the Port Neches Facility, failed to perform a PSSR when it initiated a modification (MOC #2639) to add valves and a bleeder to the suction and discharge of the S4G7A pump, a modification to process equipment that was significant enough to require a change in process safety information.

286.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.77(a) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

287.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

## TWENTY-SECOND CLAIM FOR RELIEF (Port Neches)
### Compliance Audits

**40 C.F.R. § 68.79(d)**

288.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

289.    Pursuant to 40 C.F.R. § 68.79(d), the owner or operator is required to promptly determine and document an appropriate response to each of the findings of the compliance audit, and document that deficiencies have been corrected.

290.    From at least November 23, 2016, to October 31, 2018, the Defendant, as the owner and operator of the Port Neches Facility, failed to promptly determine and document an appropriate response to certain findings of a compliance audit conducted on April 13-17, 2015, and document that deficiencies have been corrected.

291.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.79(d) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

292.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

**TWENTY-THIRD CLAIM FOR RELIEF (Port Neches)**
**Compliance Audits**
**40 C.F.R. § 68.79(d)**

293.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

294.    Pursuant to 40 C.F.R. § 68.79(d), the owner or operator is required to promptly determine and document an appropriate response to each of the findings of the compliance audit, and document that deficiencies have been corrected.

295.    From on or before June 8, 2018, to November 27, 2019, the Defendant, as the owner and operator of the Port Neches Facility, failed to promptly determine and document an

appropriate response to findings of a compliance audit conducted on April 9-12, 2018, and document that deficiencies have been corrected.

296.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.79(d) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

297.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

### TWENTY-FOURTH CLAIM FOR RELIEF (Port Neches)
**General Duty Clause - Identify Hazards**
**42 U.S.C. § 7412(r)(1)**

298.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

299.    Pursuant to Section 112(r)(1) of the Act, 42 U.S.C. § 7412(r)(1), owners and operators of stationary sources producing, processing, handling or storing substances listed pursuant to Section 112(r)(3) of the CAA, 42 U.S.C. § 7412(r)(3), or any other extremely hazardous substance, have a general duty, in the same manner and to the same extent as section 654, title 29 of the United States Code, to identify hazards which may result from any such release of these substances using appropriate hazard assessment techniques.

300.    From on or before September 6, 2019, to November 27, 2019, the Defendant, as the owner and operator of the Port Neches Facility, failed to identify hazards that may result from a release of butadiene, a regulated substance, caused by the development an operational dead leg and formation of popcorn polymer in C0105, the piping involved in the PNO Explosion, using appropriate hazard assessment techniques at the Port Neches Facility.

301.    As a result of the Defendant's failure to identify such hazards, accidental releases of regulated and extremely hazardous substances, occurred at the Port Neches Facility.

302.    As a result of these acts or omissions, the Defendant violated Section 112(r)(1) of the Act, 42 U.S.C. § 7412(r)(1).

303.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

## TWENTY-FIFTH CLAIM FOR RELIEF (Port Neches)
### General Duty Clause – Design a Safe Facility
### 42 U.S.C. § 7412(r)(1)

304.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

305.    Pursuant to Section 112(r)(1) of the Act, 42 U.S.C. § 7412(r)(1), owners and operators of stationary sources producing, processing, handling or storing substances listed pursuant to Section 112(r)(3) of the CAA, 42 U.S.C. § 7412(r)(3), or any other extremely hazardous substance, have a general duty, in the same manner and to the same extent as section 654, title 29 of the United States Code, to design a safe facility taking such steps as are necessary to prevent releases.

306.    From on or before September 6, 2019, the Defendant, as the owner and operator of the Port Neches Facility, failed to design a safe facility taking such steps as necessary to avoid the development of an operational dead leg in the design of the Port Neches Facility, without altering the design of the process to include a valve or other safety control system, which led to the formation of popcorn polymer in pipe line C0105, causing the pipe to rupture, loss of containment, and the PNO Explosion on November 27, 2019.

307.    As a result of the Defendant's failure to design a safe facility taking such steps as necessary to prevent accidental releases, accidental releases of regulated and extremely hazardous substances, occurred at the Port Neches Facility.

308.    As a result of these acts or omissions, the Defendant violated Section 112(r)(1) of the Act, 42 U.S.C. § 7412(r)(1).

309.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

### TWENTY-SIXTH CLAIM FOR RELIEF (Port Neches)
### General Duty Clause – Maintain a Safe Facility
### 42 U.S.C. § 7412(r)(1)

310.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

311.    Pursuant to Section 112(r)(1) of the Act, 42 U.S.C. § 7412(r)(1), owners and operators of stationary sources producing, processing, handling or storing substances listed pursuant to Section 112(r)(3) of the CAA, 42 U.S.C. § 7412(r)(3), or any other extremely hazardous substance, have a general duty, in the same manner and to the same extent as section 654, title 29 of the United States Code, to maintain a safe facility taking such steps as are necessary to prevent releases.

312.    From on or before September 6, 2019, to November 27, 2019, the Defendant, as the owner and operator of the Port Neches Facility, failed to maintain a safe facility when failing to maintain the piping system, including the flushing, purging, or sealing of the C0105 pipeline to minimize the formation of popcorn polymer in dead legs at the Neches Facility.

313.    As a result of the Defendant's failure to maintain a safe facility taking such steps as are necessary to prevent releases of accidental releases, accidental releases of regulated and extremely hazardous substances occurred at the Port Neches Facility.

314.    As a result of these acts or omissions, the Defendant violated Section 112(r)(1) of the Act, 42 U.S.C. § 7412(r)(1).

315.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

**TWENTY-SEVENTH CLAIM FOR RELIEF (Port Neches)**
**General Duty Clause – Minimize Consequences**
**42 U.S.C. § 7412(r)(1)**

316.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

317.    Pursuant to Section 112(r)(1) of the Act, 42 U.S.C. § 7412(r)(1), owners and operators of stationary sources producing, processing, handling or storing substances listed pursuant to Section 112(r)(3) of the CAA, 42 U.S.C. § 7412(r)(3), or any other extremely hazardous substance, have a general duty, in the same manner and to the same extent as section 654, title 29 of the United States Code, to minimize the consequences of accidental releases which do occur.

318.    From November 27, 2019, to March 30, 2020, the Defendant, as the owner and operator of the Port Neches Facility, failed to minimize the consequences of the accidental release of regulated and extremely hazardous substances and resulting Port Neches Explosion.

319.    As a result of the Defendant's failure to minimize the consequences of the accidental releases of regulated and extremely hazardous substances and a vapor cloud explosion at the Port Neches Facility, significant off-site impacts occurred, including the evacuation of 5,000 people; orders requiring 13,000 to shelter-in-place; more than $150 million in property damages; fish kills, water contamination, soil contamination; and the ultimate release of more than 11 million pounds of extremely hazardous substances from the Neches Facility.

320.    As a result of these acts or omissions, the Defendant violated Section 112(r)(1) of the Act, 42 U.S.C. § 7412(r)(1).

321.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

## TWENTY-EIGHTH CLAIM FOR RELIEF (Houston)
### Process Safety Information
### 40 C.F.R. § 68.65(d)(3)

322.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

323.    Pursuant to 40 C.F.R. § 68.65(d)(3), for existing equipment designed and constructed in accordance with codes, standards, or practices that are no longer in general use, the owner or operator is required to determine and document that the equipment is designed, maintained, inspected, tested, and operating in a safe manner.

324.    The Defendant, as the owner and operator of the Houston Facility, has failed to document for existing equipment designed and constructed in accordance with codes, standards, or practices that are no longer in general use that such equipment is designed, maintained, inspected, tested, and operating in a safe manner.

325.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.65(d)(3) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

326.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

## TWENTY-NINTH CLAIM FOR RELIEF (Houston)
### Process Hazard Analysis
### 40 C.F.R. § 68.67(e)

327.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

328.    Pursuant to 40 C.F.R. § 68.67(e), the owner or operator is required to establish a system to promptly address the team's findings and recommendations; assure that the recommendations are resolved in a timely manner and that the resolution is documented; document what actions are to be taken; complete actions as soon as possible; develop a written schedule of when these actions are to be completed; communicate the actions to operating, maintenance, and other employees whose work assignments are in the process and who may be affected by the recommendations or actions.

329.    From at least November 23, 2016, to the present, the Defendant, as the owner and operator of the Houston Facility, has failed to promptly resolve the recommendations made, document the resolutions, document actions for pending resolutions, or address all findings and recommendations for 22 PHAs performed on covered processes at the Houston Facility.

330.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.67(e) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

331.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

## THIRTIETH CLAIM FOR RELIEF (Houston)
### Operating Procedures
### 40 C.F.R. § 68.69(a)

332.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

333.    Pursuant to 40 C.F.R. § 68.69(a), the owner or operator is required to develop and implement written operating procedures that provide clear instructions for safely conducting activities involved in each covered process consistent with the process safety information.

334.    On December 5, 2016, the Defendant, as the owner and operator of the Houston Facility, failed to implement operating procedures for safely conducting activities involved in a covered process when an employee cleared process equipment to the atmosphere, resulting in the release of 1-3 butadiene.

335.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.69(a) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

336.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

### THIRTY-FIRST CLAIM FOR RELIEF (Houston)
**Operating Procedures**
**40 C.F.R. § 68.69(a)**

337.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

338.    Pursuant to 40 C.F.R. § 68.69(a), the owner or operator is required to develop and implement written operating procedures that provide clear instructions for safely conducting activities involved in each covered process consistent with the process safety information.

339.    On April 6, 2018, the Defendant, as the owner and operator of the Houston Facility, failed to implement operating procedures for safely conducting activities involved in a covered process when the wrong material was placed into a frac tank, resulting in the subsequent over pressurization and rupturing of the tank and a fire.

340.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.69(a) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

341.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

**THIRTY-SECOND CLAIM FOR RELIEF (Houston)**
**Operating Procedures**
**40 C.F.R. § 68.69(a)(1)(iii)**

342.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

343.    Pursuant to 40 C.F.R. § 68.69(a)(1)(iii), the owner or operator is required to develop and implement written operating procedures that provide clear instructions for safely conducting activities involved in each covered process consistent with the process safety information and shall address at least the following elements: (iii) temporary operations.

344.    On March 1, 2019, the Defendant, as the owner and operator of the Houston Facility, failed to implement operating procedures for safely conducting activities involved in a covered process when an employee failed to close a bypass valve during the lineup of process equipment resulting in material venting when the transfer of material was initiated.

345.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.69(a)(iii) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

346.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

**THIRTY-THIRD CLAIM FOR RELIEF (Houston)**
**Operating Procedures**
**40 C.F.R. § 68.69(a)(1)(iv)**

347.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

348.    Pursuant to 40 C.F.R. § 68.69(a)(1)(iv), the owner or operator is required to develop and implement written operating procedures that provide clear instructions for safely conducting activities involved in each covered process consistent with the process safety information and shall address at least the following elements: (iv) Emergency shutdown including the conditions under which emergency shutdown is required, and the assignment of shutdown responsibility to qualified operators to ensure that emergency shutdown is executed in a safe and timely manner.

349.    On May 3, 2020, the Defendant, as the owner and operator of the Houston Facility, failed to implement operating procedures for safely conducting activities involved in a covered process when a valve was left open while loading material, causing liquids to enter the process and a release.

350.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.69(a)(1)(iv) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

351.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

### THIRTY-FOURTH CLAIM FOR RELIEF (Houston)
**Refresher Training**
**40 C.F.R. § 68.71(b)**

352.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

353.    Pursuant to 40 C.F.R. § 68.71(b), the owner or operator is required to provide refresher training at least every three years, and more often if necessary, to each employee involved in operating a process to assure that the employee understands and adheres to the current operating procedures of the process.

354.    On December 5, 2016, the Defendant, as the owner and operator of the Houston Facility, failed to provide refresher training to an employee to assure that the employee understood and adhered to current operating procedures before the employee cleared process equipment to the atmosphere, resulting in the release of 1-3 butadiene.

355.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.71(b) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

356.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

## THIRTY-FIFTH CLAIM FOR RELIEF (Houston)
### Refresher Training
### 40 C.F.R. § 68.71(b)

357.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

358.    Pursuant to 40 C.F.R. § 68.71(b), the owner or operator is required to provide refresher training at least every three years, and more often if necessary, to each employee involved in operating a process to assure that the employee understands and adheres to the current operating procedures of the process.

359.    On at least 19 occasions, from October 29, 2017, to July 23, 2018, the Defendant, as the owner and operator of the Houston Facility, failed to provide refresher training at least every three years to employees involved in operating a process to assure that the employees understood and adhered to the current operating procedures of the process.

360.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.71(b) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

361.     Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

## THIRTY-SIXTH CLAIM FOR RELIEF (Houston)
### Refresher Training
### 40 C.F.R. § 68.71(b)

362.     Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

363.     Pursuant to 40 C.F.R. § 68.71(b), the owner or operator is required to provide refresher training at least every three years, and more often if necessary, to each employee involved in operating a process to assure that the employee understands and adheres to the current operating procedures of the process.

364.     On at least 11 occasions, from November 23, 2016, to the present, the Defendant, as the owner and operator of the Houston Facility, the Defendant failed to provide refresher training to employees involved in operating a process to assure that the employees understood and adhered to the current operating procedures of the process.

365.     As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.71(b) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

366.     Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and civil penalties up to $117,468 per day for each violation.

## THIRTY-SEVENTH CLAIM FOR RELIEF (Houston)
### Mechanical Integrity – Quality Assurance
### 40 C.F.R. § 68.73(f)(3)

367.     Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

368.    Pursuant to 40 C.F.R. § 68.73(f)(3), the owner or operator is required to assure that maintenance materials, spare parts and equipment are suitable for the process application for which they will be used.

369.    On April 23, 2017, the Defendant, as the owner and operator of the Houston Facility, failed to assure that a control valve was suitable for the process application for which it was used resulting in a tube leak resulting in a release of 1, 3-butadiene.

370.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.73(f)(3) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

371.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and a civil penalty in an amount of up to $117,468 per day for each such violation.

### THIRTY-EIGHTH CLAIM FOR RELIEF (Houston)
### Mechanical Integrity – Quality Assurance
### 40 C.F.R. § 68.73(f)(3)

372.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

373.    Pursuant to 40 C.F.R. § 68.73(f)(3), the owner or operator is required to assure that maintenance materials, spare parts and equipment are suitable for the process application for which they will be used.

374.    On May 1, 2017, the Defendant, as the owner and operator of the Houston Facility, failed to assure that a nitrogen flow regulator was suitable for the process application for which it was used resulting in a release of 1, 3-butadiene, isobutylene, and butene.

375.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.73(f)(3) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

376.     Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and a civil penalty in an amount of up to $117,468 per day for each such violation.

### THIRTY-NINTH CLAIM FOR RELIEF (Houston)
**Mechanical Integrity – Equipment Deficiencies**
**40 C.F.R. § 68.73(e)**

377.     Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

378.     Pursuant to 40 C.F.R. § 68.73(e), the owner or operator is required to correct deficiencies in equipment that are outside acceptable limits (defined by the process safety information in § 68.65) before further use or in a safe and timely manner when necessary means are taken to assure safe operation.

379.     On June 5, 2019, the Defendant, as the owner and operator of the Houston Facility, failed to correct deficiencies in compressor equipment that had been repaired many times over the years failed, resulting in a release.

380.     As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.73(e) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

381.     Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and a civil penalty in an amount of up to $117,468 per day for each such violation.

### FOURTIETH CLAIM FOR RELIEF (Houston)
**Mechanical Integrity – Quality Assurance**
**40 C.F.R. § 68.73(f)(2)**

382.     Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

383.    Pursuant to 40 C.F.R. § 68.73(f)(2), appropriate checks and inspections are required to be performed to assure that equipment is installed properly and consistent with design specifications and the manufacturer's instruction.

384.    On October 13, 2020, the Defendant, as the owner and operator of the Houston Facility, failed to perform appropriate checks and inspections to assure that equipment was installed properly and consistent with design specifications and the manufacturer's instruction when an improperly installed differential relay failed during a power loss that caused a plant-wide shut down.

385.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.73(f)(2) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

386.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and a civil penalty in an amount of up to $117,468 per day for each such violation.

**FORTY-FIRST CLAIM FOR RELIEF (Houston)**
**Mechanical Integrity – Inspections**
**40 C.F.R. § 68.73(d)(2)**

387.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

388.    Pursuant to 40 C.F.R. § 68.73(d)(2), inspection and testing procedures are required to follow recognized and generally accepted good engineering practices.

389.    On more than 1,500 occasions, from November 23, 2016, to the present, the Defendant, the owner and operator at the Houston facility, has failed to perform inspections and tests on process equipment, following recognized and generally accepted good engineering practices, by failing to calculate the remaining life of process equipment, or failing to record the results of such calculations.

390.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.73(d)(2) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

391.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and a civil penalty in an amount of up to $117,468 per day for each such violation.

### FORTY-SECOND CLAIM FOR RELIEF (Houston)
**Mechanical Integrity – Inspections**
**40 C.F.R. § 68.73(d)(3)**

392.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

393.    Pursuant to 40 C.F.R. § 68.73(d)(3), the frequency of inspections and tests of process equipment is required to be consistent with applicable manufacturers' recommendations and good engineering practices, and more frequently if determined to be necessary by prior operating experience.

394.    On more than 400 occasions, from November 23, 2016, to the present, the Defendant, as the owner and operator of the Houston Facility, has failed to perform inspections and tests on process equipment piping, at a frequency consistent with applicable manufacturers' recommendations and good engineering practices, by failing to perform inspections on piping within five years of the last inspection on such piping.

395.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.73(d)(3) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

396.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and a civil penalty in an amount of up to $117,468 per day for each such violation.

### FORTY-THIRD CLAIM FOR RELIEF (Houston)
**Management of Change**

**40 C.F.R. §§ 68.75(a) and 75(b)(5)**

397.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

398.    Pursuant to 40 C.F.R. § 68.75(a), the owner or operator is required to establish and implement written operating procedures to manage changes (except for "replacements in kind") to process chemicals, technology, equipment, and procedure; and changes to stationary sources that affect a covered process. Pursuant to 40 C.F.R. § 68.75(b)(5), the procedures shall assure that the following considerations are addressed prior to any change: (5) Authorization requirements for the proposed change.

399.    On at least 41 occasions, from January 9, 2020, to the present, the Defendant, as the owner and operator of the Houston Facility, based on the Defendant's MOCs, has failed to implement written procedures to manage changes to process chemicals, technology, equipment, and procedures.

400.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.75(a) and 75(b)(5) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

401.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and a civil penalty from at least January 1, 2016, to the present in the amount of up to $117,468 per day for each such violation.

**FORTY-FOURTH CLAIM FOR RELIEF (Houston)**
**Management of Change**
**40 C.F.R. §§ 68.75(b)(2)**

402.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

403.     Pursuant to 40 C.F.R. § 68.75(b)(2), the owner or operator is required to establish and implement written procedures to manage changes to process chemicals, technology,

equipment, and procedures that assure that considerations regarding the impact of changes on safety and health are addressed prior to any change.

404.    On numerous occasions, from January 6, 2020, to the present, the Defendant, as the owner and operator of the Houston Facility, based on the Defendant's MOCs, has failed to implement written procedures to manage changes to process chemicals, technology, equipment, or procedures that assure consideration of the impact of the change on safety and health.

405.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.75(b)(2) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

406.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and a civil penalty from at least January 1, 2016, to the present in the amount of up to $117,468 per day for each such violation.

### FORTY-FIFTH CLAIM FOR RELIEF (Houston)
**Management of Change**
**40 C.F.R. §§ 68.75(a) and 75(b)(5)**

407.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

408.    Pursuant to 40 C.F.R. § 68.75(a), the owner or operator is required to establish and implement written operating procedures to manage changes (except for "replacements in kind") to process chemicals, technology, equipment, and procedure; and changes to stationary sources that affect a covered process. Pursuant to 40 C.F.R. § 68.75(b)(5), the procedures shall assure that the following considerations are addressed prior to any change: (5) Authorization requirements for the proposed change.

409.    On numerous occasions, from January 6, 2020, to the present, the Defendant, as the owner and operator of the Houston Facility, based the Defendant's MOCs, has failed to

implement written procedures to manage changes to process chemicals, technology, equipment, or procedures that include the date a change was authorized or the date a change occurred.

410.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.75(a) and 75(b)(5) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

411.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and a civil penalty from at least January 1, 2016, to the present in the amount of up to $117,468 per day for each such violation.

## FORTY-SIXTH CLAIM FOR RELIEF (Houston)
### Management of Change
### 40 C.F.R. § 68.75(c)

412.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

413.    Pursuant to 40 C.F.R. § 68.75(c), employees involved in operating a process and maintenance and contract employees whose job tasks will be affected by a change in the process are required to be informed of, and trained in, the change prior to start-up of the process or affected part of the process.

414.    On at least 39 occasions, from January 6, 2020, to the present, the Defendant, as the owner and operator of the Houston Facility, based on the Defendant's MOCs, has failed to inform and train employees involved in operating a process whose job tasks will be affected by a change in the process of the change prior to the start-up of the process or affected part of the process.

415.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.75(c) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

416.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and a civil penalty from at least January 1, 2016, to the present in the amount of up to $117,468 per day for each such violation.

## FORTY-SEVENTH CLAIM FOR RELIEF (Houston)
### Compliance Audits
### 40 C.F.R. § 68.79(d)

417.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

418.    Pursuant to 40 C.F.R. § 68.79(d), the owner or operator is required to promptly determine and document an appropriate response to each of the findings of the compliance audit, and document that deficiencies have been corrected.

419.    From November 23, 2016, to the present, the Defendant, as the owner and operator of the Houston Facility, has failed to promptly determine and document an appropriate response to 25 findings in compliance audits dated January 29, 2016, and September 27, 2018, and document that deficiencies have been corrected.

420.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.75(d) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

421.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and a civil penalty in an amount of up to $117,468 per day for each such violation.

## FORTY-EIGHTH CLAIM FOR RELIEF (Houston)
### Incident Investigation
### 40 C.F.R. § 68.81(a)

422.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

423.    Pursuant to 40 C.F.R. § 68.81(a), the owner or operator is required to investigate each incident which resulted in or could reasonably have resulted in a catastrophic release.

424.    On October 19, 2017, October 21, 2017, September 15, 2018, and October 18, 2018, the Defendant, as the owner and operator of the Houston Facility, failed to investigate four incidents that resulted in the release of regulated substances.

425.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.81(a) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

426.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and a civil penalty in an amount of up to $117,468 per day for each such violation.

### FORTY-NINTH CLAIM FOR RELIEF (Houston)
**Incident Investigation**
**40 C.F.R. § 68.81(d)(2)**

427.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

428.    Pursuant to 40 C.F.R. § 68.81(d), a report is required to be prepared at the conclusion of the investigation which includes at a minimum: (2) date investigation began.

429.    On at least 37 occasions, from November 23, 2016, to November 17, 2020, the Defendant, as the owner and operator of the Houston Facility, failed to prepare a report at the conclusion of an investigation that included the date the investigation began.

430.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.81(d)(2) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

431.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and a civil penalty in an amount of up to $117,468 per day for each such violation.

### FIFIETH CLAIM FOR RELIEF (Houston)
**Incident Investigation**
**40 C.F.R. § 68.81(e)**

432.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

433.    Pursuant to 40 C.F.R. § 68.81(e), the owner or operator is required to establish a system to promptly address and resolve the incident report findings and recommendations.

434.    For incidents dated July 22-23, 2019, which involved the release of 1,3-butadiene, 1-butene, CO, isobutane, pentane, propane, and propylene; and August 5, 2019, which involved the release of 1,3-butadiene, 1-butene, butane, CO, isobutane; isobutylene and pentane, the Defendant, as the owner and operator of the Houston Facility, failed to establish a system to promptly address and resolve the incident report findings and recommendations.

435.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.81(e) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

436.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and a civil penalty in an amount of up to $117,468 per day for each such violation.

### FIFTY-FIRST CLAIM FOR RELIEF (Houston)
**Incident Investigation**
**40 C.F.R. § 68.81(e)**

437.    Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

438.    Pursuant to 40 C.F.R. § 68.81(e), the owner or operator is required to establish a system to promptly address and resolve the incident report findings and recommendations.

439.    On at least 13 occasions, from November 23, 2016, to the present, the Defendant, as the owner and operator of the Houston Facility, has failed to document investigation resolutions and corrective actions taken as a result of incident investigations.

440.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.81(e) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

441.     Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the

Defendant is liable for injunctive relief and a civil penalty in an amount of up to $117,468 per

day for each such violation.

### FIFTTY-SECOND CLAIM FOR RELIEF (Houston)
**General Requirements**
**40 C.F.R. § 68.12(b)(2)**

442.     Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

443.     Pursuant to 40 C.F.R. § 68.12(b)(2), the owner or operator is required to complete

the five-year accident history for a process as provided in 40 C.F.R. § 68.42 and submit it in the

RMP as provided in 40 C.F.R. § 68.168.

444.     The Defendant, as the owner and operator of the Houston Facility, has failed to

update and correct the RMP to include accident history information after a frac tank over

pressured and subsequently exploded resulting in a fire on April 6, 2018.

445.     As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.12(a)

and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

446.     Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the

Defendant is liable for injunctive relief and a civil penalty in an amount of up to $117,468 per

day for each such violation.

### FIFTY-THIRD CLAIM FOR RELIEF (Houston)
**General Requirements**
**40 C.F.R. § 68.12(b)(2)**

447.     Paragraphs 1 through 182 of the Complaint are incorporated herein by reference.

448.     Pursuant to 40 C.F.R. § 68.12(b)(2), the owner or operator is required to complete

the five-year accident history for a process as provided in 40 C.F.R. § 68.42 and submit it in the

RMP as provided in 40 C.F.R. § 68.168.

449.    The Defendant, as the owner and operator of the Houston Facility, has failed to update and correct the RMP to include accident history information after a lean oil pump developed a leak that led to a fire on December 27, 2018.

450.    As a result of these acts or omissions, Defendant violated 40 C.F.R. § 68.12(a) and Section 112(r)(7)(E) of the Act, 42 U.S.C. § 7412(r)(7)(E).

451.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and a civil penalty in an amount of up to $117,468 per day for each such violation.

## RELIEF SOUGHT

WHEREFORE, Plaintiff respectfully prays that this Court:

A.    Enter judgment against the Defendant and in favor of the United States and assess against the Defendant civil penalties in an amount of up to $117,468 per day for each day of violation alleged above, pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b).

B.    Award the United States injunctive relief pursuant to Section 113(b) of the Act, 42 U.S.C. § 7513(b);

C.    Order Defendant to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Clean Air Act alleged above; and

D.    Grant such other relief as this Court may deem just and proper.


Respectfully submitted,

**FOR THE UNITED STATES OF AMERICA:**

**TODD KIM**
Assistant Attorney General

72

Date: April 25, 2024

Environment and Natural Resources Division
U.S. Department of Justice

**RICHARD GLADSTEIN**
Senior Counsel, D.C. Bar #362404
**ASIA A. MCNEIL-WOMACK**
Trial Attorney, Ga Bar 821002
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, DC  20044-7611
Email: Richard.Gladstein@usdoj.gov
Email: Asia.McNeil-Womack@usdoj.gov
Tel.: (202) 514-1711
Tel.: (202) 305-0544
Fax: (202) 616-2427


**JOSEPH D. BROWN**
United States Attorney
Eastern District of Texas


**JAMES G. GILLINGHAM**
Assistant United States Attorney
Eastern District of Texas
101 N. College Avenue, Suite 700
Tyler, Texas 75702
Email: james.gillingham@usdoj.gov
Tel.: (903) 590-1400
Fax: (903) 590-1436
Texas State Bar # 24065295


Of Counsel:

**CLARISSA HOWLEY MILLS**
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 6
1201 Elm Street
Dallas, Texas 75270
(214) 665-6782
mills.clarissa@epa.gov